**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**


**ISAAC J. CASTILE, III,**

        **Plaintiff,**

   **v.**                    **Civil Action 2:18-cv-226
Judge George C. Smith
Magistrate Judge Jolson**


**FRANKLIN COUNTY
SHERIFF, et al.,**

        **Defendants.**


**REPORT AND RECOMMENDATION
AND ORDER**

      Plaintiff Isaac J. Castile, III, a *pro se* prisoner, brings this action against the Franklin County Sheriff and "unknown agents/officers." (*See* Doc. 1-1). This matter is before the undersigned for consideration of Plaintiff's Motion for Leave to Proceed *in forma pauperis* (Doc. 1) and the initial screen of Plaintiff's Complaint under 28 U.S.C. § 1915(e)(2).

      For the reasons that follow, Plaintiff's request to proceed *in forma pauperis* is **GRANTED**. Furthermore, having performed an initial screen and for the reasons that follow, it is **RECOMMENDED** that the Court **DISMISS** Plaintiff's Complaint in its entirety pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A.

**I.     MOTION FOR LEAVE TO PROCEED *IN FORMA PAUPERIS***

      Upon consideration of Plaintiff's Motion for Leave to Proceed *in forma pauperis* under 28 U.S.C. § 1915(a)(1) and (2) (Doc. 1), Plaintiff's Motion is **GRANTED**. Plaintiff is required to pay the full amount of the Court's $350 filing fee. 28 U.S.C. § 1915(b)(1). Plaintiff's

certified trust fund statement reveals that he has an insufficient amount to pay the full filing fee. (*Id.*).

Pursuant to 28 U.S.C. § 1915(b)(1), the custodian of Plaintiff's inmate trust account at the Chillicothe Correctional Institution is **DIRECTED** to submit to the Clerk of the United States District Court for the Southern District of Ohio as an initial partial payment, 20% of the greater of either the average monthly deposits to the inmate trust account or the average monthly balance in the inmate trust account, for the six-months immediately preceding the filing of the Complaint. After full payment of the initial, partial filing fee, the custodian shall submit 20% of the inmate's preceding monthly income credited to the account, but only when the amount in the account exceeds $10.00 until the full fee of $350.00 has been paid to the Clerk of this Court. 28 U.S.C. § 1915(b)(2). *See McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997). Checks should be made payable to Clerk, United States District Court and should be sent to:

Prisoner Accounts Receivable
260 U.S. Courthouse
85 Marconi Boulevard
Columbus, Ohio 43215

The prisoner's name and this case number must be included on each check.

Consequently, it is **ORDERED** that Plaintiff be allowed to prosecute his action without prepayment of fees or costs and that judicial officers who render services in this action shall do so as if the costs had been prepaid. The Clerk of Court is **DIRECTED** to mail a copy of this Order to Plaintiff and the prison cashier's office. The Clerk is further **DIRECTED** to forward a copy of this Order to the Court's financial office in Columbus.

## II.  INITIAL SCREEN

### a.  Relevant Standard

Because Plaintiff is proceeding *in forma pauperis*, the Court must dismiss the Complaint, or any portion of it, that is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2).  Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to set forth "a short and plain statement of the claim showing that the pleader is entitled to relief."  In reviewing a complaint, the Court must construe it in Plaintiff's favor, accept all well-pleaded factual allegations as true, and evaluate whether it contains "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  On the other hand, a complaint that consists of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is insufficient.  *Id.* (quoting *Twombly*, 550 U.S. at 555).  Although *pro se* complaints are to be construed liberally, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), "basic pleading essentials" are still required.  *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).

### b.  Plaintiff's Complaint

Plaintiff alleges that he was taken from Chillicothe Correctional Institution ("CCI") to Franklin County Correctional Center ("FCCC") on February 26, 2016.  (Doc. 1-1 at PAGEID #: 12).  Plaintiff asserts that his entire tank was punished on March 1, 2016, after a single individual opted to "put his shirt over the light fixture to block the light."  (*Id.*).  Plaintiff claims that, as a

result of the individual's actions, "[t]he lieutenant put the whole tank on phone restriction and television restriction for 24 hours." (*Id*.).

Plaintiff states that, on March 2, 2016, he asked if he could call his lawyers concerning an upcoming court hearing. (*Id*.). He also completed two inmate call cards that day—one to call his lawyers and the other for a Bible. (*Id*. at PAGEID #: 13). Plaintiff asserts that he was not permitted to make either call. (*Id*.).

The following day, on March 3, 2016, Plaintiff observed the phone was not in use, so he called his brother "to handle some business for [him]" and to ask him to call his attorneys in advance of a hearing scheduled for March 7, 2016. (*Id*.). Four inmates were playing cards nearby. (*Id*.) One of these inmates allegedly had multiple interactions with Plaintiff in an effort to use the phone. (*Id*. at PAGEID #: 13–14).

Plaintiff asserts that, although he agreed to (and indeed did) end his call, the inmate nevertheless attacked him. (*Id*. at PAGEID #: 14). Plaintiff claims that he "never threw a single punch," but the inmate beat him until he was bloody and unconscious. (*Id*.). Plaintiff claims that he suffered injuries to his head, face, teeth, and eyes, and was sent for inpatient treatment at Grant Medical Center for approximately two days. (*Id*. at PAGEID #: 14–15).

Plaintiff asserts that, on March 4, 2016, he was released from Grant Medical Center back to the FCCC, where he received inadequate medical treatment. (*Id*. at PAGEID #: 15). Plaintiff states that he "sat in severe pain for at least a full week untreated, disoriented, and fading in and out of consciousness." (*Id*.). According to Plaintiff, FCCC administered him just three Motrin (three times per day) for ten days. (*Id*.). Plaintiff asserts that he questioned nurses repeatedly concerning what he felt was inadequate medication, and he was told, to no avail, that they would check into it. (*Id*. at PAGEID #: 17).

Plaintiff was taken to a follow-up appointment at Grant Medical Center on March 16, 2016. (*Id*. at PAGEID #: 15). Plaintiff alleges that his doctor continued his prescription for Narco[1] but also "added ibuprofen to the prescription since FCCC doesn't administer Narco." (*Id*. at PAGEID #: 17). Plaintiff states that "upon returning from Grant," the FCCC doctor did not see him despite being aware that he "still had severe headaches, head and facial swelling, and Grant [had] continued his prescription." (*Id*.). Plaintiff was returned to CCI on March 23, 2016. (*Id*. at PAGEID #: 18).

The Complaint is brought pursuant to 42 U.S.C. § 1983 and raises, *inter alia*, claims of deliberate indifference to Plaintiff's health and safety in violation of his Eight Amendment rights and unfair discipline in violation of his Fourteenth Amendment rights. (*See* Doc. 1-2 at PAGEID #: 23; *see also generally* Doc. 1-1). More specifically, Plaintiff asserts that the Franklin County Sheriff and/or the FCCC (including their medical and other staff) "were derelict and negligent from February 26–March 23, 2016" in the following ways:

a) In failing to hold a state prisoner safely upon return to court from a state institution;

b) In operating an arbitrary policy, practice, or procedure of housing a state prisoner who is returning to court with known, violent, recently sentenced street culture thugs, or inmates with exceptionally dissimilar offenses;

c) In operating an arbitrary policy, practice, or procedure of executing mass punishment, when there is a known singular offender;

d) In publishing a policy which states substantially that despite the punishment of an inmate, calls to attorneys and clergy are allowable, yet having no definitive policy, practice, or procedure for ensuring the effective operation of the published policy;

---

[1] Norco is a combination of acetaminophen and hydrocodone, an opioid pain reliever. *See* http://www.drugs.com/norco.html (visited Mar. 29, 2018).

e) In failing to administer medication and treatment that was prescribed to me by Grant Medical Center, and failing to at least administer reasonably similar medication and treatment;

f) In failing to offer medically professional treatment and counseling after physically seeing that the whole right side of my head and face were swollen by more than an inch and seeing that my right eye was swollen shut over a long period of time, and as such, showing deliberate indifference to my serious and observable medical needs, even denying medication and treatment that I continually asked for three times per day.

g) In operating a practice, policy, or procedure of using medical call cards to document inmate medical needs and requests, yet having no definite practice, policy, or procedure for ensuring that documented requests and needs are timely and effectively executed on, which resulted in my attempts to resolve these matters being taken as frivolous and ignorable;

h) In operating a practice, policy, or procedure that created and perpetuated an environment without reasonable security, that led to unanswered violence and deficient medical treatment, which resulted in … negative effects and injuries…..

(*Id*. at PAGEID #: 19–20). Plaintiff makes clear that he is not pursuing any claims against the Corrections Reception Center ("CRC") or CCI. (*Id*. at PAGEID #: 21).

### c. Discussion

"The statute of limitations applicable to a § 1983 action is determined by reference to state law, while the date on which the statute of limitations begins to run is governed by federal law." *Wheeler v. Dayton Police Dep't*, No. 12-4029, 2013 U.S. App. LEXIS 26373, *3 (6th Cir. Mar. 15, 2013) (citing *Wallace v. Kato*, 549 U.S. 384, 388 (2007)); *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 635 (6th Cir. 2007)). The statute of limitations for a § 1983 civil action arising in Ohio is contained in Ohio Rev. Code Ann. § 2305.10, "which requires that actions for bodily injury be filed within two years after their accrual." *Browning v. Pendleton*, 869 F.2d 989, 992 (6th Cir. 1989). "Ordinarily, such a period begins to run when the plaintiff knows or has reason to know of the injury that is the basis of his action." *See Wheeler*, 2013

U.S. App. LEXIS 26373, *3–4 (citing *Eidson*, 510 F.3d at 635). In making this determination, courts look to "what event should have alerted the typical lay person to protect his or her rights." *Eidson*, 510 F.3d at 635 (quotations and citations omitted).

Here, the Complaint was signed on March 12, 2018. (Doc. 1-1 at PAGEID #: 22). Thus, events alleged to have occurred before March 12, 2016 would be untimely. *See Boddie v. Higginbotham*, No. 2:14-CV-2395, 2016 WL 552696, at *2 (S.D. Ohio Feb. 12, 2016). The present case arises from the alleged beating by an inmate on March 3, 2016. (Doc. 1-1 at PAGEID #: 14). Consequently, Defendants' alleged failure to keep Plaintiff safe, maintain a safe environment, or properly house Plaintiff on that day are untimely. Plaintiff's claims concerning "mass punishment when there is a known singular offender" and the alleged policy concerning inmate calls are also untimely.

Plaintiff's claims for deliberate indifference to his medical serious needs warrant separate consideration. For these claims, the cause of action accrues when the prisoner is denied medical care. *Brookes v. Shank*, No. 2:13-cv-516, 2014 WL 32306, at *2 (S.D. Ohio Jan. 6, 2014). However, "[a]ctual actions ... of refusing medical care represent discrete unlawful actions (beyond passive inaction) that trigger the statute of limitations." *Bruce v. Corr. Med. Servs., Inc.*, 389 F. App'x 462, 467 (6th Cir. 2010). As explained, claims based on alleged deliberate indifference to Plaintiff's serious medical needs that occurred before March 12, 2016, are untimely.

The remaining question is, therefore, whether Plaintiff states a viable claim for alleged deliberate indifference to his serious medical needs between March 13, 2016 and March 23, 2016 (the end date for Plaintiff's claims set forth in his Complaint). (Doc. 1-1 at PAGEID #: 19) (stating that Defendants unlawful actions occurred between February 26, 2016 and March 23,

2016). Plaintiff complains that, although FCCC administered him some medication during this timeframe, he did not receive the "Narco" prescribed to him at Grant Medical Center. (*Id.* at PAGEID #: 15). Plaintiff also claims that he was not seen by the FCCC doctor and received "[n]o ice, no real medicine, and no professional medical attention … at FCCC." (*Id.* at PAGEID #: 17–18).

To the extent that Plaintiff allegations are timely, Plaintiff's claims are based on his requests for a specific form of medical treatment. That is, he disagreed with FCCC providing him with medication other than Narco. It is well established that a disagreement between prison officials and an inmate as to a particular form of medical treatment will not give rise to a claim under federal law. *Westlake v. Lucas*, 537 F.2d 857, 860, n.5 (6th Cir. 1976) (stating that where a prisoner has received medical attention and the dispute is over the particular form of treatment received, "federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law"). Thus, there is no constitutional violation when an institution's doctor changes a prescription from one pain medication to another. *See, e.g.*, *Carter v. Troutt*, 175 F. App'x 950, 950–51 (10th Cir. 2006) (finding a difference of opinion and no constitutional violation where prison doctor changed prescription from one pain medication to another); *Lazarus v. Abilittif*, No. 1:12-cv-1279, 2013 WL 1500658, at *4 (W.D. Mich. Apr. 10, 2013) ("To the extent Plaintiff complains that he should have received Norco instead of Ultram, he alleges only a 'difference[ ] of opinion among medical personnel regarding a patient's appropriate treatment [that] do[es] not give rise to deliberate indifference.'") (quoting *Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 261 (7th Cir. 1996)).

Further, Plaintiff's complaint that an FCCC doctor should have provided him additional treatment also constitutes a disagreement with a particular form of treatment. *See, e.g.*, *Kendrick*

*v. Collins*, No. 2:09-CV-177, 2009 WL 1010636, at *1 (S.D. Ohio Apr. 14, 2009) ("The fact that plaintiff's demand for a particular procedure was not met is insufficient to give rise to a constitutional violation."). At bottom, Plaintiff does not allege facts to demonstrate that his treatment was "so woefully inadequate as to amount to no treatment at all." *Westlake*, 537 F.2d at 860, n. 5; *see also Miller v. Calhoun*, 408 F.3d 803, 820 (6th Cir. 2005) ("'When the need for treatment is obvious, medical care which is so cursory as to amount to no treatment at all may amount to deliberate indifference.'"). Thus, Plaintiff has not alleged a viable Eighth Amendment claim.

### III.    CONCLUSION

"Although the statute of limitations is an affirmative defense, when it appears clear on initial screening of the complaint that action is time-barred, the complaint may be dismissed for failure to state a claim upon which relief may be granted." *Lowe v. Ohio*, No. 1:18-cv-92, 2018 U.S. Dist. LEXIS 27850, *5–6 (S.D. Ohio Feb. 21, 2018). Because it is clear on the face of the Complaint that the claims alleged to have occurred before March 12, 2016 are untimely, the Court **RECOMMENDS** that those claims be **DISMISSED**. Further, to the extent that Plaintiff sets forth timely claims, the Court also **RECOMMENDS** that those claims be **DISMISSED** for failure to state a claim upon which relief can be granted.

In sum, Plaintiff's Motion for Leave to Proceed *in forma pauperis* is **GRANTED** (Doc 1); however, it is **RECOMMENDED** that the Court **DISMISS** Plaintiff's Complaint in its entirety pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A.

The Clerk of Court is **DIRECTED** to mail a copy of this Order to Plaintiff and the prison cashier's office. The Clerk is further **DIRECTED** to forward a copy of this Order to the Court's

financial office in Columbus.  Finally, the Clerk is **DIRECTED** to send a copy of this Order to the Ohio Attorney General's Office, 150 E. Gay St., 16th Floor, Columbus, Ohio 43215.

### Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.


Date: March 29, 2018                    /s/ Kimberly A. Jolson
                                        KIMBERLY A. JOLSON
                                        UNITED STATES MAGISTRATE JUDGE